2026-1432

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**ENTROPIC COMMUNICATIONS, LLC,**
*Appellant*,

v.

**JOHN A. SQUIRES, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,**
*Intervenor.*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in IPR2024-00441.

**BRIEF FOR THE DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE**

AUSTIN P. MAYRON
Deputy Solicitor

ROBERT J. MCMANUS
Senior IP Legal Counsel

KEVIN K. MCNISH
Senior Counsel for Patent Law and Litigation

PETER J. SAWERT
OMAR F. AMIN
Associate Solicitors

U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

August 17, 2026

*Attorneys for the Director of the U.S. Patent and Trademark Office*

## ILLUSTRATIVE CLAIMS

1. [1A] A system comprising:

[1B] an analog-to-digital converter operable to digitize a received signal spanning an entire television spectrum comprising a plurality of television channels, said digitization resulting in a digitized signal;

[1C] a signal monitor operable to:

*analyze said digitized signal* to determine a characteristic of said digitized signal; and

report said determined characteristic to a source of said received signal;

[1D] a data processor operable to process a television channel to recover content carried on the television channel; and

[1E] a channelizer operable to:

select a first portion of said digitized signal;

select a second portion of said digitized signal; and

*concurrently output* said first portion of said digitized signal to said signal monitor and said second portion of said digitized signal to said data processor.

Appx55 (7:15-32) (emphases added) (annotations as per Petition Claim Listing Appendix at Appx149 that appear to be referenced in Entropic's Opening Brief).

## TABLE OF CONTENTS


I. STATEMENT OF THE ISSUES ........................................................ 1

II. STATEMENT OF THE CASE ........................................................ 2

A. The ’008 Patent ........................................................ 2

B. The Prior Art ........................................................ 6

1. Kamieniecki ........................................................ 6

2. Konstantinos ........................................................ 7

C. The Board Decision ........................................................ 8

III. SUMMARY OF THE ARGUMENT ........................................................ 11

IV. STANDARD OF REVIEW ........................................................ 13

V. ARGUMENT ........................................................ 15

A. The Board did not abuse its discretion by reading the Petition to put forth a combination of the teachings of Kamieniecki and Konstantinos ........................................................ 15

1. The Board correctly read the Petition to present a combination of teachings rather than a physical substitution. ........................................................ 15

2. Entropic’s demonstrative picture is not a fair representation of the Petition’s obviousness ground. ............. 18

3. Entropic’s physical substitution theory finds no support in the wording of the Petition or the testimony of Comcast’s expert, Mr. Lett. ........................................................ 20

4. Entropic has put forward no evidence in support of a deficiency related to its physical substitution theory of the Petition. ........................................................ 21

5. Entropic’s attempt to manufacture a new ground from the single instance of “implies” in the Board’s opinion falls flat ........................................................ 22

B. The Board’s Decision complies with the APA because it is sufficient for meaningful appellate review. ............................... 25

1. The Board adequately explained its obviousness conclusion and its underlying factual findings. ...................... 25

2. Entropic's allegation that the Board failed to fully map the claim limitations to the prior art amounts to mere disagreement with the Board's findings. .............................. 28

C. Substantial evidence supports the Board's finding that the "concurrently output" limitation would have been obvious over the combination of Kamieniecki and Konstantinos. ............ 31

VI. CONCLUSION ........................................................................ 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Antor Media Corp.*,
689 F.3d 1282 (Fed. Cir. 2012) .......... 18

*Ariosa Diagnostics v. Verinata Health, Inc.*,
805 F.3d 1359 (Fed. Cir. 2015) .......... 19

*Bradium Techs. LLC v. Iancu*,
923 F.3d 1032 (Fed. Cir. 2019) .......... 18, 25

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938) .......... 7

*Constant v. Advanced Micro-Devices, Inc.*,
848 F.2d 1560 (Fed. Cir. 1988) .......... 11, 24

*Corephotonics, Ltd. v. Apple Inc.*,
84 F.4th 990 (Fed. Cir. 2023) .......... 8

*Cutsforth, Inc. v. MotivePower, Inc.*,
636 F. App'x 575 (Fed. Cir. 2016) .......... 21

*Ericsson Inc. v. Intell. Ventures I LLC*,
901 F.3d 1374 (Fed. Cir. 2018) .......... 8

*In re Gartside*,
203 F.3d 1305 (Fed. Cir. 2000) .......... 7, 8

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
160 F.4th 1360 (Fed. Cir. 2025) .......... 8

*In re Jolley*,
308 F.3d 1317 (Fed. Cir. 2002) .......... 8

*In re Keller*,
642 F.2d 413 (C.C.P.A. 1981) .......... 18, 25

*Motorola, Inc. v. Interdigital Tech. Corp.*,
121 F.3d 1461 (Fed. Cir. 1997) ....................11, 24

*In re Mouttet*,
686 F.3d 1322 (Fed. Cir. 2012) .................... 11

*Novartis AG v. Torrent Pharms. Ltd.*,
853 F.3d 1316 (Fed. Cir. 2017) .................... 24

*Novo Nordisk A/S v. Caraco Pharm. Lab'ys, Ltd.*,
719 F.3d 1346 (Fed. Cir. 2013) .................... 19

*In re Nuvasive*, *Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ....................20, 21

*In re Nuvasive, Inc.*,
841 F.3d 966 (Fed. Cir. 2016) ....................9, 20, 21

*Orthopedic Equip. Co. v. United States*,
702 F.2d 1005 (Fed. Cir. 1983) .................... 11

*Provisur Techs., Inc. v. Weber, Inc.*,
50 F.4th 117 (Fed. Cir. 2022).................... 19

*Samsung Elecs. Co. v. Elm 3DS Innovations, LLC*,
925 F.3d 1373 (Fed. Cir. 2019) .................... 15

*In re Sang-Su Lee*,
277 F.3d 1338 (Fed. Cir. 2002) ....................19, 21

*Securus Techs., Inc. v. Global Tel*Link Corp.*,
685 F. App'x 979 (Fed. Cir. 2017)....................21, 22

*In re Urbanski*,
809 F.3d 1237 (Fed. Cir. 2016) ....................8

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*,
853 F.3d 1272 (Fed. Cir. 2017) ....................9

*In re Watts*,
354 F.3d 1362 (Fed. Cir. 2004) ....................7

*Yita LLC v. MacNeil IP LLC*,
69 F.4th 1356 (Fed. Cir. 2023) ........ 8

**Statutes**

5 U.S.C. § 706(2)(E) ........ 7

35 U.S.C. § 312(a)(3) ........ 9

## STATEMENT OF RELATED CASES

The Director is aware that Entropic identified several related matters in its Statement of Related Cases. The Director is not aware of any other appeal in connection with the patent at issue in this case that was previously before this or any other court. The Director is not aware of any additional cases that are pending in this or any other court that will directly affect, or directly be affected by, the Court's decision in this appeal.

## I. STATEMENT OF THE ISSUES

This appeal relates to an inter partes review (IPR) of U.S. Patent No. 8,792,008 ("the '008 patent") owned by Appellant Entropic Communications, LLC ("Entropic"). The '008 patent broadly relates to a television receiver for monitoring incoming signal quality at the same time that the receiver is in use to view television programming.

The Patent Trial and Appeal Board ("Board") concluded that claims 1-18 of the '008 patent would have been obvious over the combination of Kamieniecki and Konstantinos. The Board concluded that some of those claims would also have been obvious over the same combination and additional prior art.

The issues are:

(1) whether the Board's obviousness conclusion impermissibly departed from the grounds raised in the Petition for IPR;

(2) whether the Board violated the APA by concluding all claims were unpatentable without a separate, limitation-by-limitation analysis of every uncontested claim limitation and every uncontested dependent claim; and

(3) whether substantial evidence supports the Board's finding that the prior art combination teaches the "concurrently output" limitation of claim 1.

## II. STATEMENT OF THE CASE

The Board instituted trial (IPR2024-00441) based on a Petition for IPR filed by Comcast Cable Communications, LLC ("Petitioner" or "Comcast"). The Board's Final Written Decision concluded that claims 1-18 of the '008 patent are unpatentable as they would have been obvious over the combination of Kamieniecki and Konstantinos. Appx1-39.[1] Entropic's request for Director Review was denied (Appx41-43), and this appeal followed. The Director intervened to defend the Board's Decision following Comcast's notice that, pursuant to a settlement agreement, it would not participate in the appeal. ECF Nos. 2, 3, 9.

### A. The '008 Patent

The '008 patent discloses a transmitter/receiver system (gateway) for monitoring signal quality on a television network without interrupting customer service. Appx52-53 (2:55-3:10). Figure 1A (below) illustrates an exemplary communication system, with the service provider headend **108** receiving content from various sources and distributing content to customer premises equipment (CPE) via wide area network (WAN) **118**. Appx52 (2:34-56).

[1] The Board also concluded that certain claims would have been obvious over the combination of Kamieniecki and Konstantinos with either Yu or Cholas (Appx39), but Entropic has not separately argued those grounds. Thus, Yu and Cholas are not at issue in this appeal.




Fig. 1A of the '008 patent

Appx45 (Fig. 1A). Gateways **120a** and **120b** (CPE in individual homes) each include a receiver module **150** and transmit module **152** to transmit messages to the headend **108** and provide service to customer end systems **126** and **128** (e.g., computers and televisions). Appx52 (2:39-41, 55-62); Appx53 (4:10).

As illustrated in Figure 1B (below), the disclosed receiver circuit **100** includes an RF front-end **158** that processes a received broadband signal **S** to produce a digitized signal **D**. Appx53 (3:5-18).




Fig. 1B of the ’008 patent

Appx46 (Fig. 1B). Receiver circuit **100** also includes a channelizer **152**[2] that selects and outputs portions of the digitized signal (frequency bands $C_1$-$C_{J+1}$ (e.g., television channel bands)) to a monitoring module **154** that analyzes signal characteristics and a data processing module **156** that recovers content for end users. Appx53 (3:5-10, 20-28, 33-35; 3:61-4:3). Monitoring module **154** and data processing module **156** may each generate control signals for RF front-end **158** and/or channelizer **152**, and the monitoring module may send network status

[2] The ’008 patent’s text mistakenly and repeatedly uses the label **102** for the channelizer, but **102** is already used to identify the antenna in Figure 1A. *See, e.g.*, Appx52 (2:36); Appx53 (3:8-9); Appx45 (Fig. 1A); Appx46 (Fig. 1B). The Director thus references the channelizer as **152** as shown in Figure 1B.

updates to headend **108** via transmit module **152**. Appx53 (3:45-57; 4:3-6); Appx46 (Fig. 1B).

Claim 1 is illustrative:

1. [1A] A system comprising:

    [1B] an analog-to-digital converter operable to digitize a received signal spanning an entire television spectrum comprising a plurality of television channels, said digitization resulting in a digitized signal;

    [1C] a signal monitor operable to:

    *analyze said digitized signal* to determine a characteristic of said digitized signal; and

    report said determined characteristic to a source of said received signal;

    [1D] a data processor operable to process a television channel to recover content carried on the television channel; and

    [1E] a channelizer operable to:

    select a first portion of said digitized signal;

    select a second portion of said digitized signal; and

    *concurrently output* said first portion of said digitized signal to said signal monitor and said second portion of said digitized signal to said data processor.

Appx55 (7:15-32) (emphases added) (annotations as per Petition Claim Listing Appendix at Appx149 that appear to be referenced in Entropic's Opening Brief)

### B. The Prior Art

#### 1. Kamieniecki

Kamieniecki[3] discloses a set-top box that monitors signal quality on a cable network. Appx984 (¶¶4, 6, 13). Figure 1 (below) illustrates an exemplary cable system with headend **102** connected to user set-top box (STB) **110** via cable network **104**. Appx984 (¶13).

FIG. 1




Kamieniecki Fig. 1

App983 (Fig. 1). The STB **110** includes an in-band (IB) tuner **112** for receiving television channels, an out-of-band (OOB) tuner **114** for receiving data channels, and a monitor **116** that gathers signal-quality information such as error counts and signal levels for both IB and OOB bands. Appx984-985 (¶¶13-14).

Monitor **116** tunes through each channel in a channel map to collect statistics, monitors errors on the OOB band, and may transmit the collected

[3] U.S. Patent Pub. No. 2005/0114879 ("Kamieniecki"). Appx982-987.

information to headend **102**. *Id.* (¶¶ 14, 17-21). Kamieniecki discloses that monitoring may occur at idle times so as not to disturb the viewer's experience, with the collected data either sent when collected or stored to be sent when STB **110** is polled by the headend **102**. Appx985 (¶¶14, 17, 18).

### 2. Konstantinos

Konstantinos[4] discloses a multichannel receiver architecture that addressed the emerging demand for multi-channel tuning in television receivers. Appx988 (Abstract); Appx999 (¶1). One embodiment of the multichannel receiver (MCR) is illustrated in Figure 2 (below). Appx1001 (¶42).




Konstantinos Fig. 2

[4] U.S. Patent Pub. No. 2010/0120386 ("Konstantinos"). Appx988-1009.

Appx990 (Fig. 2). Konstantinos teaches that the MCR **200** includes a low-noise amplifier/variable gain amplifier (LNA/VGA) **202** that receives and conditions the composite broadband RF signal (i.e. a cable TV signal comprising multiple channels). Appx1001 (¶43). Analog-to-digital converter (ADC) **204** converts the output from LNA/VGA **202** to a composite digital signal which is supplied to multi-channel selector **206**. *Id.* (¶¶42, 44).

Within multi-channel selector **206**, multi-band selector **205** divides the composite digital signal into a number of sub-bands that are then received by channel selectors **207A–207N** that each tune and deliver one channel from a received sub-band. Appx1001-1002 (¶¶45-46). Each of the output streams from channel selectors **207** are "further processed by a decoder (not illustrated)." Appx1001 (¶43); Appx1007 (¶106); Appx998 (Fig. 9 at step **940**).

### C. The Board Decision

In the Final Written Decision, the Board concluded that claims 1-18 of the '008 patent would have been obvious over the combination of Kamieniecki and Konstantinos and that claims 7-9 and 15-17 would also have obvious over those same two references and additional prior art. Appx38-39.

The Board treated claim 1 as illustrative. Appx7. The Board began its decision on the obviousness of claims 1-18 over Kamieniecki and Konstantinos with an extensive review of the arguments for motivation to combine and

reasonable expectation of success. Appx10; Appx13-22. In finding both, the Board concluded that the Petition did not rely on a "physical substitution" of elements from Konstantinos to Kamieniecki. Appx16. Instead, the Board concluded that substituting Konstantinos's multi-channel receiver for Kamieniecki's IB and OOB tuners in the Petition's obviousness ground was "simply . . . a combination of the concepts disclosed in the references." *Id.* The Board also found that one of ordinary skill in the art would have been motivated to add Konstantinos's multi-channel tuner to Kamieniecki's STB to allow improved monitoring without waiting for an idle state or disturbing end users. Appx17-18.

The Board then turned to the disputed claim limitations. Appx23-29. First, the Board considered a number of arguments from both Entropic and Comcast about the "signal monitor operable to: analyze said digital signal" limitation of claim 1, which is included in limitation [1C]. Appx23-25. The Board concluded that Entropic's argument, that Kamieniecki's monitor is limited to analyzing analog signals, was an improper attack on the teaching of Kamieniecki alone. Appx25. The Board had already found that the Petition relied upon the concept of substituting "the IB and OOB tuners in Kamieniecki's STB with Konstantinos' multi-channel receiver." Appx16 (citing Appx101). With that in mind, the Board found that in the proposed combination, "Konstantinos's ADC digitizes the

received RF signal" and "Kamieniecki's monitor would analyze digital signals" from the multi-channel receiver. Appx25 (citing Appx105-109). Thus, the Board found that while "Kamieniecki's monitor analyzes signals in the digital domain" in the obviousness combination, Entropic failed to "explain why it would have been beyond the level of ordinary skill to modify Kamieniecki's monitor to operate in the digital, rather than analog, domain to analyze signal quality." Appx25.

The Board then addressed the "concurrently output" limitation of claim 1. Appx25-26. The Board found Entropic's argument that neither Kamieniecki nor Konstantinos alone disclose concurrent output to a processor (television channel decoder) and a monitor was unpersuasive. *Id.* The Board found that the reason to add Konstantinos's multi-channel receiver to Kamieniecki was precisely to allow Kamieniecki's disclosed monitoring to happen concurrent with television viewing (using one of the additional tuners provided for the monitoring) and thereby improve performance over Kamieniecki alone—which allowed monitoring only when the single IB tuner was *not* being used for television viewing by the customer. *Id.*

The Board then considered and rejected Entropic's arguments as to another claim limitation and as to secondary considerations of nonobviousness, which Entropic does not dispute on appeal. Appx27-34. Finally, the Board concluded

that "having found [Entropic's] arguments unpersuasive," claims 1-18 of the '008 patent were unpatentable as obvious "[i]n view of the prior art and arguments presented in the Petition." Appx34.

## III. SUMMARY OF THE ARGUMENT

The Board's conclusions that claims 1-18 would have been obvious to a person having ordinary skill in the art are legally correct and should be affirmed. Substantial evidence supports the Board's underlying findings that the Kamieniecki-Konstantinos combination teaches all of the limitations of illustrative claim 1 and that a skilled artisan would have been able and motivated to make the combination. Entropic's challenges to the Board's conclusions should be rejected.

First, the Board did not depart from the grounds raised in the Petition. Entropic's entire argument is premised on the assertion that the Petition was restricted to a physical-substitution theory. But Entropic's characterizations do not accurately represent either the obviousness grounds presented in the Petition or the testimony of Comcast's expert. Instead, the Board correctly read the petition to present a teachings-based combination of Kamieniecki and Konstantinos The Board's findings about what the prior art teaches are supported by the prior art, not just the testimony of Comcast's expert, and, as the Board found, Entropic has put forward no evidence to rebut Comcast's prima facie case

for a reasonable expectation of success. Finally, a single word in the Board's decision, taken out of context, does not show that the Board's obviousness conclusion improperly departed from the scope of the Petition

Second, the Board's decision does not violate the APA. The Board's final written decision in an IPR must include a sufficiently clear record of its reasoning and the evidence relied upon in order to facilitate this Court's meaningful review. When the Board adopts the Petition's arguments and evidence for claim limitations that the patent owner has not contested, that is a sufficient record for the necessary review. Because there are no contrary arguments or evidence from the patent owner to weigh, the only obligation of this Court is to confirm that the Board found those limitations to be taught by the prior art in accordance with the petitioner's overall burden of persuasion. Indeed, Entropic identifies no uncontested claim limitation for which the Petition lacks evidence to support the Board's findings.

Entropic then argues that the fact that the Board did not repeat arguments and evidence for uncontested claim limitations led it to make a finding about the "signal monitor" limitation that lacks substantial evidence support. But Entropic's argument focuses on narrow snippets of the Board's Decision. The record reflects that the Board fully considered Entropic's arguments about that limitation and provided a thorough explanation supported by substantial evidence

for its finding that the Kamieniecki-Konstantinos combination teaches the limitation. In doing so, the Board correctly rejected Entropic's argument that the Petition relied upon a physical substitution theory for obviousness.

Third, substantial evidence supports the Board's finding that the combination of Kamieniecki and Konstantinos teaches the "concurrently output[]" limitations of the claims. As the Board found, the Petition clearly described how, in the combination, Konstantinos's multichannel receiver (claimed "channelizer") simultaneously sends digital output streams to the monitor of Kamieniecki (claimed "signal monitor") and the multi-channel decoder of Konstantinos (claimed "data processor"). Entropic's argument that this level of detail is insufficient because the Petition relied upon a physical-substitution theory is unpersuasive here as well.

## IV. STANDARD OF REVIEW

Entropic has the burden to show that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004). This Court upholds fact findings made by the Board that are supported by substantial evidence, 5 U.S.C. § 706(2)(E), and reviews the Board's legal conclusions *de novo*, *In re Gartside*, 203 F.3d 1305, 1315-16 (Fed. Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Where "two different,

inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002).

Although the ultimate determination of obviousness is a legal conclusion, it is based on underlying factual findings. *Gartside*, 203 F.3d at 1316. What a prior-art reference teaches is one of the questions of fact underlying obviousness. *In re Urbanski*, 809 F.3d 1237, 1241 (Fed. Cir. 2016).

This Court reviews "the Board's assessments of what has been argued . . . in an IPR for abuse of discretion." *Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990, 1002–03 (Fed. Cir. 2023) (citing *Yita LLC v. MacNeil IP LLC*, 69 F.4th 1356, 1366 (Fed. Cir. 2023)); *see also Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 160 F.4th 1360, 1365 (Fed. Cir. 2025). "The Board abuses its discretion when its decision '(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact finding; or (4) involves a record that contains no evidence on which the Board could rationally base its decision.'" *Corephotonics*, 84 F.4th at 1003 (quoting *Ericsson Inc. v. Intell. Ventures I LLC*, 901 F.3d 1374, 1379 (Fed. Cir. 2018)). Whether the Board relied on an entirely new theory of *prima facie* unpatentability, not present in the petition, is a question of law that this Court reviews de novo. *Id.* at 1008 (citing

*Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1286 (Fed. Cir. 2017); 35 U.S.C. § 312(a)(3); *In re Nuvasive, Inc.*, 841 F.3d 966, 970 (Fed. Cir. 2016)).

## V. ARGUMENT

First, the Board did not depart from the grounds raised in the Petition. Second, the Board's decision does not violate the APA. Third, substantial evidence supports the Board's finding that the combination of Kamieniecki and Konstantinos teaches the "concurrently output[]" limitations of the claims.

### A. The Board did not abuse its discretion by reading the Petition to put forth a combination of the teachings of Kamieniecki and Konstantinos.

Much of Entropic's Opening Brief (Br. 37-48) contends that the Petition relied upon a physical substitution of elements for obviousness, and that the Board's final written decision deviated from the physical-substitution theory that Entropic ascribes to the Petition. That assertion misses the mark. The Board correctly read the Petition to set forth a combination of teachings rather than a physical substitution. Appx14, Appx16. And because the Board's reading of the Petition was correct, the Board did not abuse its discretion.

#### 1. The Board correctly read the Petition to present a combination of teachings rather than a physical substitution.

In the Petition, Comcast presented a combination of the teachings of Kamieniecki and Konstantinos. For example, the Petition states that the

combination of references "replaces the IB and OOB tuners in Kamieniecki's STB with Konstantinos' multi-channel receiver. This is a natural evolution of television technology, and specifically *taught* by Konstantinos." Appx101-102 (emphasis added). The Petition also explains that "[a] POSITA would have been motivated to apply Konstantinos' teaching of a multi-channel receiver to the monitoring STB of Kamieniecki" and that "[a] POSITA would have had the skill to implement Konstantinos' teachings in the system of Kamieniecki." Appx103

The declaration of Comcast's expert, Mr. Lett, in support of the Petition, also reflects that Comcast was presenting a combination of the teachings of Kamieniecki and Konstantinos. Mr. Lett testified about combining teachings in his understanding of the relevant legal standards: "I understand that a patent claim is unpatentable if, at the time of the invention, it would have been obvious to one of ordinary skill in the art to combine the teachings of the prior art to yield the patent claim." Appx679-680 (¶ 22). And in analyzing the claims, he discussed combining the teachings of Kamieniecki and Konstantinos. Appx732-733 (¶¶116-117); Appx737-738 (¶¶ 125, 127).

Consistent with the Board's interpretation of the Petition as setting forth a teachings-based combination, both the '008 Patent and the prior art focus on teachings at a conceptual level. *See* Appx16. Like the '008 patent, the disclosures of Kamieniecki and Konstantinos are generally based on functional block

diagrams and assume that the details of implementation are within the capabilities of one of skill in the art. *See id.*; *also compare, e.g.*, Appx46 ('008 patent Fig. 1B) *with* Appx983 (Kamieniecki Fig. 1) *and* Appx990 (Konstantinos Fig. 2); *see also Motorola, Inc. v. Interdigital Tech. Corp.*, 121 F.3d 1461, 1471 (Fed. Cir. 1997) (level of detail in the prior art similar to specification of patent at issue sufficient to be enabling); *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1569 (Fed. Cir. 1988) (same).

This Court's decisions reinforce that the Board correctly read the Petition to present a theory based on combining the teachings of Kamieniecki and Konstantinos. For example, "[i]t is well-established that a determination of obviousness based on teachings from multiple references does not require an actual, physical substitution of elements." *In re Mouttet*, 686 F.3d 1322, 1332 (Fed. Cir. 2012). And "[w]hat matters in the § 103 nonobviousness determination is whether a person of ordinary skill in the art, having all of the teachings of the references before him, is able to produce the structure defined by the claim." *Orthopedic Equip. Co. v. United States*, 702 F.2d 1005, 1013 (Fed. Cir. 1983). Against that legal backdrop, the Board reasonably understood the Petition to present a combination of teachings.

In sum, between (1) the Petition and expert declarant explaining that they were combining teachings from Kamieniecki and Konstantinos; (2) the prior art

and the ’008 patent providing teachings at a conceptual level; and (3) this Court’s caselaw holding that obviousness does not require an actual, physical substitution of elements, the Board correctly read Comcast’s Petition to advance a teachings-based combination. Entropic’s arguments that the Petition presented only a physical substitution rely on an incorrect legal standard and an inaccurate portrayal of the Petition and the evidence, as discussed below.

**2. Entropic’s demonstrative picture is not a fair representation of the Petition’s obviousness ground.**

Entropic’s mockup diagram (Br. 39 (from Appx338), shown below) is a pictorial straw-man argument.

FIG. 1




Entropic Annotation of Kamieniecki Fig. 1 and Konstantinos Fig. 2

Entropic points to a demonstrative that it created and argues that it proves the Petition lacks detail about the connection from the multichannel tuner to the monitor and to the data processor. Br. 41. But Entropic ignores the information

in the Petition about the connection from the multichannel receiver to the monitor and decoders discussed above. *See* Appx110-112. The mere fact that the Petition relies on some of the teachings of Kamieniecki and Konstantinos that are not included in these figures does not prove that the obviousness ground in the Petition was incomplete. Even if all of the prior arts' teachings were illustrated in the figures, it would still be unreasonable to expect the obviousness *combination* to be fully represented by cutting and pasting the preexisting figures in the prior art.

As discussed above, the '008 patent specification does not supply detailed circuit diagrams of the invention, and, even if it did, the claims do not describe the invention in that level of detail. All that is claimed or described is an ordered connection of functional boxes, without limitations about how the, e.g., monitoring, processing, decoding, sampling, etc., inside the boxes occurs or about how the boxes are physically connected. The Kamieniecki and Konstantinos teachings are provided at a similar level of detail—relating functional blocks to each other without specifics about the internal workings of the boxes or the details of the physical connections. Given that, it would be counterintuitive, if not impossible, to construe the Petition to require physical substitution of components that are not physically described as Entropic argues (Br. 37-38).

### 3. Entropic's physical substitution theory finds no support in the wording of the Petition or the testimony of Comcast's expert, Mr. Lett.

Entropic's attempted reliance (Br. 38-41) on (1) the words "replace" (and its variants) or "in place of" in the Petition; and (2) the testimony of Comcast's expert has no persuasive weight. In contrast to anticipation, any obviousness argument will involve changes in comparison to the prior art references individually. That is the very nature of obviousness, but replacing, changing, or altering elements of the prior art does not automatically invoke a restricted physical substitution theory. There is simply nothing Entropic points to in the Petition to suggest that it presented a theory based on the substitution of physical components rather than, as the Board found, "a combination of the concepts disclosed in the references," Appx16. The high-level schematic nature of Kamieniecki's and Konstantinos's disclosures further undercuts any such finding. *See, e.g.*, Appx983 (Fig. 1); Appx990 (Fig. 2).

Furthermore, Entropic's description of Mr. Lett's deposition testimony omits important details. For example, Entropic faults (Br. 44) Mr. Lett's testimony about connecting to the decoders at Appx2649 (159:6-20), but Mr. Lett provided that information in a follow up question (Appx2649 (160:21-161:13)). Similarly, Mr. Lett followed up the testimony that Entropic cites (Br. 44) at Appx2652 with further information at Appx2652-2653 (172:15-174:2) and, at

Appx2653, declined to create a new hand drawn exhibit "on the fly" (Appx16) at his deposition.

#### 4. Entropic has put forward no evidence in support of a deficiency related to its physical substitution theory of the Petition.

Entropic holds up a physical-substitution theory as limiting the Petition without clearly articulating what additional evidence that allegedly requires, but, contrary to Entropic's arguments (Br. 44), the Board's findings underlying its obviousness conclusion are supported by the prior art references themselves, not just expert testimony.

Entropic relies (Br. 42-43) on *Samsung Electronics Co. v. Elm 3DS Innovations, LLC*, 925 F.3d 1373 (Fed. Cir. 2019), but that case provides no support for Entropic's physical-substitution argument. In *Samsung*, this Court affirmed the Board's finding that, considering the complexity of integrated-circuit technology, there was insufficient evidence in the record to support a reasonable expectation of success. 925 F.3d at 1381-82. In particular, there was insufficient evidence that substituting a deposited-dielectric process for a grown-dielectric process, in a step of a prior art integrated circuit manufacturing process, in order to arrive at the claimed integrated circuit, would succeed. *Id.* at 1377, 1381-83. Here, Entropic did not establish that the petition was even limited to a physical-substitution theory. Moreover, Entropic has not challenged the Board's finding

of a reasonable expectation of success, much less provided persuasive record evidence that connecting Konstantinos's multi-channel receiver to a digital monitor and decoders would be beyond the level of skill in the art. Appx25-26.

#### 5. Entropic's attempt to manufacture deviation from the Petition from the single instance of "implies" in the Board's opinion falls flat.

Entropic incorrectly argues that the Board introduced an obviousness theory different from that offered in the Petition (i.e., that Kamieniecki's monitor is used in the combination to analyze digital signals) by using the word "implies" in a single statement of the Decision. Br. 45-47. Specifically, Entropic points to the following statement in the Board's Decision: "The Petition thus implies, contrary to Patent Owner's argument, that Kamieniecki's monitor analyzes signals in the digital domain." Appx25.

Entropic's contention that the Board deviated from the Petition's contentions requires reading that sentence in isolation. But the context of Board's statement shows that the Board found that, at minimum, Kamieniecki's monitor being configured to analyze digital signals was a necessary consequence of the combination presented in the Petition. The presence of the word "thus" in the "implies" sentence ties its conclusion to the prior sentence. That prior sentence reads, "The Petition stated that Konstantinos's ADC digitizes the received RF signal, and that Kamieniecki's monitor would analyze *digital* signals from the

IB/OOB tuners and determine signal quality information such as error count and signal level estimates." *Id.* (citing Appx 105-109) (emphasis added). As this shows, the Board made a clear statement about what it understood the Petition to assert, without qualification or suggesting that it was necessary to read between the lines or to depart from the Petition's contentions to make that finding.

Furthermore, this understanding of the Board's statement is supported in the clear text of the Petition itself, which the Board cited in making its finding. The Petition unequivocally states that "[i]n the proposed combination, the monitor 116 [of Kamieniecki] would receive a selected IB and/or OOB channel as *a digital output stream from* the Konstantinos receiver 200." Appx108 (emphasis added); *see also*, *e.g.*, Appx107 ("The digitization of the IB and OOB channels of Kamieniecki by the ADC 204 results in a multi-channel digital signal ('digitized signal') that is a digitized equivalent of the input RF signal."); Appx113 ("A POSITA would have recognized that as a result of replacing Kamienieck's IB and OOB tuners with Konstantinos' multi-channel receiver, the channel(s) to be monitored ('first portion of said digitized signal') would be output to Kamieniecki's monitor 116 . . . .").

Entropic argues (Br. 45-46) that, despite the clear language quoted above, the Petition cannot have meant what it said because Kamieniecki's monitor, as taught, could not analyze signals in the digital domain. Even setting aside

arguments about whether Kamieniecki's monitor would have included functionality to analyze "digital transmissions" or decoded digital MPEG-2 channel streams (*see, e.g.*, Appx24; Appx258-260; Appx984 (¶4); Appx985 (¶¶19, 22)), Kamieniecki's monitor is simply a box in Figure 1 (Appx983). The design and implementation of the monitor are presumed to be within the skill of the ordinary artisan. *See In re Antor Media Corp.*, 689 F.3d 1282, 1287–88 (Fed. Cir. 2012); *see also* Appx103-104 (combination involves known techniques and technology); Appx737-738 (¶127) (Lett decl.).

And, as the Board specifically found (Appx25), there is no evidence in the record to suggest that the ordinary artisan is any less capable of designing a monitor for the digital domain than a monitor for the analog domain (which, even Entropic admits, would have to account for the modulated digital information (Br. 46)). At best, Entropic's argument is an improper attack on Kamieniecki alone rather than what the combination of Kamieniecki and Konstantinos would have taught to one of ordinary skill in the art. *Bradium Techs. LLC v. Iancu*, 923 F.3d 1032, 1050 (Fed. Cir. 2019); *In re Keller*, 642 F.2d 413, 426 (C.C.P.A. 1981). Even now, Entropic offers no explanation of why an ordinary artisan, given the requisite skill in the art, could design an analog monitor in accordance with Kamieniecki (a point it conceded) but could not design a digital monitor for the Kamieniecki-Konstantinos combination.

The Petition was clear, and Entropic failed in its burden to put forward evidence rebutting the Petition's showing of a reasonable expectation of success. *Novo Nordisk A/S v. Caraco Pharm. Lab'ys, Ltd.*, 719 F.3d 1346, 1353 (Fed. Cir. 2013). Thus, substantial evidence supports the Board's finding.

**B. The Board's Decision complies with the APA because it is sufficient for meaningful appellate review.**

Entropic's central procedural argument is that the Board violated the APA by finding claims 1-18 unpatentable without separately analyzing every limitation of every claim. Br. 19-32. This argument lacks merit because it rests on an overstatement of the Board's obligation and ignores the full record.

**1. The Board adequately explained its obviousness conclusion and its underlying factual findings.**

The APA requires that the Board "present its reasoning in sufficient detail that the court may conduct meaningful review of" its Decision. *In re Sang-Su Lee*, 277 F.3d 1338, 1346 (Fed. Cir. 2002); *see also Provisur Techs., Inc. v. Weber, Inc.*, 50 F.4th 117, 123 (Fed. Cir. 2022) (collecting cases). Moreover, this Court may affirm the Board's Decision if it "may reasonably discern that [the Board] followed a proper path, even if that path is less than perfectly clear." *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1365 (Fed. Cir. 2015). Here, the Board considered and rejected Entropic's arguments on motivation (Appx13-22), the claim limitations that Entropic alleged were not met by the

combination (Appx23-29), and objective indicia of non-obviousness (Appx29-34). The Board's decision then states that "[i]n view of the prior art and arguments presented in the Petition," claims 1-18 would have been obvious. Appx34. Nothing in the APA requires that the Board must write a separate section of the Final Written Decision for "every claim element and every challenged claim," as Entropic appears to assert, particularly on limitations and claims for which Entropic did not present evidence or argument and thereby forfeited challenges to Comcast's showing. *See, e.g.*, Br. 16; *see also* Appx282 ("Patent Owner is cautioned that any arguments not raised in the response may be deemed waived.").

Entropic's reliance on other cases (Br. 19-24, 31-32) is misplaced. In *In re Nuvasive*, 842 F.3d 1376, 1383-85 (Fed. Cir. 2016), "the PTAB acknowledged that the key issue" was motivation to combine, but "[t]he majority of the PTAB's analysis was limited to summaries of the parties' arguments" and "failed to articulate a reason why the PHOSITA would have been motivated to modify" the prior art. With one exception addressed below, Entropic identifies no alleged shortcomings in the Board's extensive analysis of the disputed issues. Instead, Entropic attempts to elevate form over substance in suggesting that the Board should have regurgitated uncontested portions of the Petition plainly adopted by the Board. Indeed, the *Nuvasive* court also held that the patent owner waived

certain arguments by not presenting them during the trial phase of the underlying IPR. *Id.* at 1380-82.

Entropic also relies on this Court's nonprecedential decision in *Cutsforth, Inc. v. MotivePower, Inc.*, 636 F. App'x 575, 578 (Fed. Cir. 2016), but *Cutsforth* is highly similar to *Nuvasive*. Once again, this Court determined in *Cutsforth* that "the majority of the Board's Final Written Decision [was] spent summarizing the parties' arguments and offer[ed] only conclusory analysis of its own." 636 F. App'x at 578. Thus, it was not possible for this Court to "conduct meaningful review" of the Board's decision as to the contested limitations. *Id.* at 577 (citing *Sang-Su Lee*, F.3d at 1343-45). That is not the situation here.

Finally, this Court's decision in *Securus Technologies, Inc. v. Global Tel*Link Corp.*, 685 F. App'x 979, 987 (Fed. Cir. 2017) is nonprecedential and thus limited to the specific facts and circumstances in that case. In particular, the portion of *Securus* decision relied on by Entropic cites *Sang-Su Lee* in support of the need for an explanation by the Board sufficient to allow judicial review but *Sang-Su Lee* concerned an inadequate explanation with regard to a *contested* motivation to combine finding (277 F.3d at 1341-42, 1343). By contrast, here the Board set forth detailed explanations for why it found in Comcast's favor on every contested issue: motivation to combine; reasonable expectation of success; the disputed claim limitations; and the alleged objective indicia of non-obviousness.

Furthermore, the *Securus* court did not address how the Board's adoption of the Petition's arguments and evidence in support of *uncontested* claim limitations—for which Entropic forfeited arguments before the Board and before this Court—violates a patent owner's rights under the APA.

In sum, Entropic's argument rings hollow because the Board's considered rejection of Entropic's allegations and its adoption of the arguments and evidence presented in the Petition suffices for meaningful appellate review. That is particularly true here, when Entropic has neither preserved any questions related to the uncontested limitations below nor identified any specific lack of substantial evidence support for this Court to review.

**2. Entropic's allegation that the Board failed to fully map the claim limitations to the prior art amounts to mere disagreement with the Board's findings.**

The Board found that the claimed "analog-to-digital converter" (*see, e.g.*, claim limitation [1B]) is taught by Konstantinos's analog-to-digital converter ("ADC") **204**. Appx12 (citing Appx1001 (¶¶42-43); Appx990 (Fig. 2)); Appx25 (citing Appx105-107). Entropic acknowledges this mapping in the Petition, but not the Board's findings. Br. 26-27.

From this starting point, Entropic argues that Kamieniecki's monitor **116** could not satisfy claim limitation [1C] because Kamieniecki's monitor allegedly receives and analyzes an analog signal whereas the signals output by

Konstantinos's substituted multi-channel receiver are digital (due to the presence of ADC **204**). Br. 27-30. Entropic then argues that it would have been necessary to modify the monitor, potentially involving another ADC, and that the Board did not account for these inconsistencies. *Id.*

But, while the Board recognized these arguments (Appx23-25), the Board found it unnecessary to address them because the Board rejected their premise (Appx25). Namely, Entropic's arguments are built on the incorrect assertion that the Petition's proposed obviousness combination required a physical substitution of the Konstantinos's multi-channel receiver into Kamieniecki's STB.

That assertion is wrong for two reasons. First, Entropic's argument is based on an incorrect legal standard for obviousness. As discussed above (*see* V.A), obviousness depends on combinations of teachings and does not require physical substitutions of elements. Second, Entropic's argument relies on an incorrect understanding of the petition and the record. As also discussed above (*id.*), the Board correctly found that the Petition's obviousness arguments did not rely on a "physical substitution" theory. Appx16. That includes the Board's reading of the petition's contentions about limitation [1C]. As the Board explained, "[t]he Petition stated that Konstantinos's ADC digitizes the received RF signal, and that Kamieniecki's monitor would analyze digital signals" from the tuners to "determine signal quality information." Appx25 (citing Appx105-109); *see also*

Appx108 ("In the proposed combination, the monitor 116 would receive a selected IB and/or OOB channel as a digital output stream from the Konstantinos receiver 200.").

As also discussed above, that obviousness combination does not require physical substitution because the prior art teachings are disclosed at a conceptual level. *See* Appx16. Like the '008 patent, the disclosures of Kamieniecki and Konstantinos are generally based on functional block diagrams and assume that the details of implementation are within the capabilities of one of skill in the art. *See id.*; *also compare, e.g.*, Appx46 ('008 patent Fig. 1B) *with* Appx983 (Kamieniecki Fig. 1) *and* Appx990 (Konstantinos Fig. 2); *see also Motorola*, 121 F.3d at 1471 (level of detail in the prior art similar to specification of patent at issue sufficient to be enabling); *Constant*, 848 F.2d at 1569 (same). Thus, the Board found a reasonable expectation of success in making the combination because Entropic did "not explain why it would have been beyond the level of ordinary skill to modify Kamieniecki's monitor to operate in the digital, rather than analog, domain to analyze signal quality, as the Petition suggests." Appx25.

Having concluded that there was no basis for Entropic's physical-substitution theory, it was unnecessary for the Board to address Entropic's subsidiary arguments in greater detail. *See Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1328 (Fed. Cir. 2017).

### C. Substantial evidence supports the Board's finding that the "concurrently output" limitation would have been obvious over the combination of Kamieniecki and Konstantinos.

Finally, Entropic incorrectly argues (Br. 32-37) that there is no substantial evidence to support the Board's finding that the combination of Kamieniecki and Konstantinos teaches the "concurrently output" limitation. Entropic tries to suggest that the straightforward combination of prior art elements described in the Petition as satisfying this limitation is unclear. But there is no such lack of clarity or evidence.

Entropic begins by arguing that neither Kamieniecki nor Konstantinos alone teaches the "concurrently output" limitation. Br. 32-34. But, as the Board relied on the combination of prior art references as teaching this limitation, Entropic's argument is not legally relevant. *Bradium*, 923 F.3dat 1050; *In re Keller*, 642 F.2d at 426 .

Entropic's argument (Br. 34-37) that the combination of elements in the Petition is unclear fares no better. At base, Entropic's argument is a repetition of its argument about physical substitution, with a similar claim that the prior art combination should supply greater detail than the '008 patent claims or specification.

Claim 1 of the '008 patent recites "a channelizer" that "concurrently outputs" a first part of the "digitized signal" to the "signal monitor" and a second

part of the "digitized signal" to the "data processor." Appx55. The Petition clearly explained, as discussed above, that the "Kamieniecki-Konstantinos combination replaces the IB and OOB tuners in Kamieniecki's STB with Konstantinos' multi-channel receiver," meaning that Konstantinos's ADC **204** receives the Kamieniecki RF input signals and then outputs the equivalent fully-digitized signal. Appx101; Appx106-107.

The Petition then specifies that Kamieniecki's monitor **116** teaches the claimed monitor and that "[i]n the proposed combination, the monitor 116 would receive a selected IB and/or OOB channel as a digital output stream from the Konstantinos receiver 200." Appx107-108. Next, the Petition explains that (1) Kamieniecki necessarily includes a decoder connected to the tuner output to convert the received MPEG-2 stream and allow viewing of television channels by the customer as described; (2) Konstantinos explicitly describes decoders connected to the multi-channel receiver output streams for the same function; and (3) those decoders teach the claimed "data processor." Appx109. In each case, the decoder(s) are connected to the tuner output(s).

Finally, the Petition explains that Konstantinos's multi-channel selector **206** teaches the claimed "channelizer." Appx110-112. And the Petition leaves no doubt how those pieces fit together, explaining that "[o]nce Kamieniecki is updated with Konstantinos' multi-channel receiver," the channel(s) to be

monitored ("first portion of said digitized signal") and the channels for TV viewing ("second portion of said digitized signal") "would be 'concurrently output' via parallel Channel Selectors 207A-N [of Konstantinos] to the Kamieniecki monitor 116 and to the decoders," respectively. Appx112.

This is all the specificity that the claims require for the "concurrently output" limitation (Appx55), and Figure 1B of the '008 patent (Appx46) includes no circuit diagrams or other more specific details beyond what the Petition describes for the combination of Kamieniecki and Konstantinos. Entropic's quotation of a single sentence from the Petition about claim limitation [1E] to argue that the multi-channel receiver outputs go nowhere ("into the ether") is belied by the discussion above. The remainder of Entropic's argument is a demand for more detailed description of the obviousness combination, but Entropic fails to provide any persuasive reason that the description of the prior art combination in the Petition is insufficient to teach the two simple arrows from the "Channelizer box" to the "Monitoring" and "Data Processing" boxes in Figure 1B of the '008 patent. Appx46.

Because the Board found that the obviousness combination in the Petition was based on "a combination of the concepts disclosed in the references" and "schematic, not physical, components," (Appx16), the Board rejected these same arguments by Entropic (Appx26). Instead, the Board found that the "Konstantinos

multichannel receiver concurrently outputs 'multiple output streams' and that 'when used with Kamieniecki, one [stream] can be monitored while another [stream] can be watched by a viewer.'" Appx26 (citing Appx105-109).

## VI. CONCLUSION

For all these reasons, this Court should affirm the Board's decision that claims 1-18 of the '008 patent are unpatentable as they would have been obvious over the combination of Kamieniecki and Konstantinos.

August 17, 2026

Respectfully submitted,

*/s/ Peter J. Sawert*
AUSTIN P. MAYRON
Deputy Solicitor

ROBERT J. MCMANUS
Senior IP Legal Counsel

KEVIN K. MCNISH
Senior Counsel for Patent Law and Litigation

PETER J. SAWERT
OMAR F. AMIN
Associate Solicitors

Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

*Attorneys for the Director of the United States Patent and Trademark Office*

## CERTIFICATE OF COMPLIANCE

I certify pursuant to FRAP 32(a)(7) that the foregoing BRIEF FOR THE DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE complies with the type volume limitation. The total number of words in the foregoing brief, excluding the table of contents and table of authorities, is 6,754 as measured by the word-processing software used to prepare this brief.

Dated: August 17, 2026

Respectfully submitted,

/s/ *Peter J. Sawert*

Peter J. Sawert
Associate Solicitor
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035